UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FirstEnergy Family Credit Union, Inc., | Case No. 5:12-cv-0864 |
| Plaintiff, | Judge Benita Y. Pearson |
| vs. | |
| FirstEnergy Federal Credit Union, | |
| Defendant. | |

**Memorandum in Support of FirstEnergy Family**
**<u>Credit Union, Inc.'s Motion for Preliminary Injunction</u>**

{4010234:2}

# Table of Contents

Table of Authorities .........................................................................................................ii

Introduction ................................................................................................................... 1

Factual Background........................................................................................................ 1

   I.   FirstEnergy Family's History and Marks ........................................................ 1

   II.  FirstEnergy Federal Adopts an Infringing Name............................................ 2

Law and Argument ........................................................................................................ 5

   I.   FirstEnergy Family Meets the Legal Standard for Injunctive Relief.............. 5

   II.  The Strength of FirstEnergy Family's Case Favors Injunctive Relief............ 6

       A.   FirstEnergy Family Owns Protectable Marks............................................ 6

       B.   FirstEnergy Federal Infringes the FirstEnergy Family Marks................. 8

           1.   The Parties' Services Are Nearly Identical .......................................... 9

           2.   The Parties' Marks Are Nearly Identical .............................................. 9

           3.   Actual Confusion Means More Confusion Is Likely............................ 10

           4.   The Parties' Identical Marketing
Channels Promote Confusion................................................................ 11

           5.   Customers' Low Degree of Care Favors Confusion ............................. 11

           6.   The Strength of the Plaintiff's Marks Favors Confusion ..................... 11

           7.   FirstEnergy Federal's Presumed
Bad Intent Favors Confusion ............................................................... 11

           8.   Likelihood That the Parties' Product Lines Will Expand In
the Same Way Makes Confusion More Likely To Continue ............... 12

           9.   Likelihood Of Confusion Is Undeniable............................................... 12

   III. FirstEnergy Federal's Infringement Is Causing Irreparable Harm ............. 12

   IV. The Harm To Others Factor Favors Injunctive Relief.................................. 13

   V.   The Public Interest Favors Injunctive Relief ................................................ 14

Conclusion .................................................................................................................... 15

**Cases**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619 (6th Cir. 2002) ........................................................................ 7, 8

*Basicomputer Corp. v. Scott,* 973 F.2d 507 (6th Cir. 1992) ........................................ 13

*Big Boy Rest. v. Cadillac Coffee Co.,* 238 F. Supp. 2d 866 (E.D. Mich. 2002) ............................................................................................................ 14

*Circuit City Stores, Inc. v. CarMax, Inc.,* 165 F.3d 1047 (6th Cir. 1999) .................. 12

*Commerce Bank & Trust Co. v. TD Banknorth, Inc.,* 554 F.Supp.2d 77 (D. Mass. 2008) ................................................................................................ 7

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center,* 109 F.3d 275 (6th Cir. 1997) ........................................................................ 9, 10

*DeGidio v. West Group Corp.,* 355 F.3d 506 (6th Cir. 2004) ...................................... 6

*Ferrari S.P.A. v. Roberts,* 944 F.2d 1235 (6th Cir. 1991) ........................................... 8

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642 (6th Cir. 1982) ................................................................... 6, 9, 10

*Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100 (6th Cir. 1991) ............................................................................................. 6, 9

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,* 502 F.3d 504 (6th Cir. 2007) ................................................................................................... 7

*McDonald's Corporation v. Robertson,* 147 F.3d 1301 (11th Cir. 1998) ...................... 5

*Ohio State Univ. v. Thomas,* 738 F. Supp. 2d 743 (S.D. Ohio 2010) ................... 13, 14

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393 (6th Cir. 1997) ................................................................................................... 5

*Therma–Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623 (6th Cir. 2002) ..................... 11

*Tumblebus Inc. v. Cranmer,* 399 F.3d 754 (6th Cir. 2005) .......................................... 6

*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992) ........................................ 6

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205 (2000) .............................. 6

*Worthington Foods, Inc. v. Kellogg Co.,* 732 F. Supp. 1417 (S.D. Ohio 1990) ............................................................................................................ 13

*Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595 (6th Cir. 1991) .................... 8, 13

**Statutes**

15 U.S.C. § 1052(f) ...................................................................................................... 7

15 U.S.C. § 1125(a)(1)(A) ........................................................................................... 6

Ohio Rev. Code § 1733.05(C) ............................................................................ 1

Ohio Rev. Code § 1733.07(A)(1)(a) ............................................................... 14

**Regulations**

12 C.F.R. § 701, Appx. B ............................................................................ 3, 14

INTRODUCTION

For nearly 14 years, FirstEnergy Family Credit Union ("FirstEnergy Family") enjoyed exclusive use of its FIRSTENERGY FAMILY CREDIT UNION, FIRSTENERGY FAMILY, FEFCU and FIRSTENERGY FCU marks and the *fefcu.com* domain name (collectively, the "FirstEnergy Family Marks"). But that exclusivity ended when Allegheny Energy Federal Credit Union ("Allegheny Energy FCU") changed its name to "FirstEnergy Federal Credit Union" ("FirstEnergy Federal"). Since then, customers, government agencies, and others have experienced significant confusion, causing irreparable harm to both FirstEnergy Family and innocent third parties. The Court therefore should enjoin FirstEnergy Federal from using its new, confusingly similar name and related designators.

## FACTUAL BACKGROUND

### I.     FirstEnergy Family's History and Marks

As a state-chartered credit union, FirstEnergy Family is a not-for-profit cooperative financial institution that is owned and managed by its members. (Baker Dec., Exh. A, ¶ 2.) As a credit union, FirstEnergy Family only can accept customers from a defined field of membership. *See* Ohio Rev. Code § 1733.05(C). For FirstEnergy Family, that field comprises current and retired employees of the FirstEnergy Corp. operating companies and their families. (*Id*.) FirstEnergy Corp. does not, however, own any interest in FirstEnergy Family or have any oversight or control over its operations. (*Id.* ¶ 3.) Moreover, FirstEnergy Corp. has never objected, and it has no agreement with FirstEnergy Family relating, to FirstEnergy Family's use of the compound word "FirstEnergy" as a part of its name. (*Id*.)

{4010234:2}

FirstEnergy Family was formed in 1936 as Akron-Ohio Edison Credit Union to serve the employees of the Akron Division of the Ohio Edison Company. (Movius Dec., Exh. B, ¶ 2.) The credit union has used several names over the past 76 years. (*Id.* ¶¶ 2-7; Baker Decl. ¶ 4.) Most recently, it adopted the name "FirstEnergy Family Credit Union" in 1998 after FirstEnergy Corp. was formed through the merger of the Ohio Edison Company and Centerior Energy Corporation. (Baker Decl. ¶ 4; Movius Decl. ¶ 7.) Since then, FirstEnergy Family has continually used that name and the other FirstEnergy Family Marks. (Baker Decl. ¶¶ 5-11.)

While FirstEnergy Family was the first credit union serving the employees of FirstEnergy Corp.'s direct predecessors, it is not the only one. Some have a similar history, like Edison Financial Credit Union, which was established in 1940 as Youngstown Ohio Edison Credit Union. (Movius Decl. ¶ 8.) Others started as credit unions for employees of utility companies that were later acquired by FirstEnergy Corp., including several that served employees of Allegheny Energy, which FirstEnergy Corp. acquired on February 25, 2011. (*Id.* ¶ 9.) Those credit unions include APS Federal Credit Union and defendant FirstEnergy Federal, which was known as Allegheny Energy Federal Credit Union.

## II.  FirstEnergy Federal Adopts an Infringing Name

Until recently, the fact that multiple credit unions serve the employees of FirstEnergy Corp. did not cause confusion with respect to the source of FirstEnergy Family's services. (Baker Decl. ¶ 14.) That changed when Allegheny Energy FCU adopted the name "FirstEnergy Federal Credit Union" effective January 1, 2012,

and started using the abbreviated designations "FEFCU" and "FirstEnergy FCU" and the *FirstEnergyFCU.com* domain name. (*See* Answer, ECF # 7, ¶ 14.)

FirstEnergy Federal admits it had actual knowledge of FirstEnergy Family when it chose its new name. (Answer, ECF # 7, ¶ 19.) In fact, it referenced FirstEnergy Family by name in a July 2011 email advising FirstEnergy Corp. of its new name. (July 21, 2011 email from D. Momeyer to J. Luecken, Movius Decl. ¶ 10.) FirstEnergy Federal did not, however, extend the same courtesy to FirstEnergy Family. (Baker Decl. ¶ 15.) If it had, FirstEnergy Family could have taken steps to avoid confusion by, for example, objecting under the relevant National Credit Union Administration regulations. *See* 12 C.F.R. § 701, Appx. B, Section V, at 1-5.

FirstEnergy Family did not learn that Allegheny Energy FCU was adopting a confusingly-similar name until after it was publicly announced on January 1, 2012. (Baker Decl. ¶ 16.) Since then, actual confusion have been rampant:

- FirstEnergy Federal customers have called FirstEnergy Family to conduct business, including a customer trying to reorder checks who said, "[t]hat's shitty and very confusing," when told that FirstEnergy Family and FirstEnergy Federal are not the same company. Others have become agitated or rude with FirstEnergy Family upon learning that they contacted the wrong credit union.

- FirstEnergy Federal customers have mistakenly submitted applications for <u>$164,000</u> in loans using the FirstEnergy Family website, and numerous others have attempted to enroll in virtual banking and open new accounts – including for minor children.

- FirstEnergy Federal members have mistakenly sent checks for deposit totaling more than <u>$1,265</u> to FirstEnergy Family.

- The number of visitors to FirstEnergy Family's website from Pennsylvania has increased <u>65.8%</u> since January 1, 2012, and the number

of visitors accessing the site via searches with the word "federal" has increased by <u>137.3%</u>.

- A FirstEnergy Family member mistakenly applied for and was issued a credit card by FirstEnergy Federal for her son.

- Multiple car dealers have contacted FirstEnergy Family to obtain a payoff amounts for auto loans to FirstEnergy Federal members.

- FirstEnergy Family experienced difficulty obtaining titles from the Ohio BMV after FirstEnergy Federal enrolled in an electronic title service. After FirstEnergy Family explained that FirstEnergy Federal recently adopted its new name, the Ohio BMV representative remarked: "Wow. That name is too similar which is very confusing."

- The West Virginia Department of Transportation sent FirstEnergy Family a Certificate of Title for FirstEnergy Federal customer's vehicle.

- The South Carolina Title Bureau contacted FirstEnergy Family regarding a "FirstEnergy <u>Family Federal</u> Credit Union" customer. Despite being told the correct name, the South Carolina Title Bureau nonetheless addressed its correspondence to "First Energy <u>Family Federal</u> Credit Union."

- Travelers Insurance Company identified FirstEnergy Federal as the Loss Payee/Lienholder on an Automobile Certificate of Insurance for a policy issued to a FirstEnergy Family customer.

- A vendor that has done business with FirstEnergy Family for years started addressing invoices to "FirstEnergy Federal Credit Union."

- The FirstEnergy Corp. mailroom (whose employees are eligible for membership in both credit unions) has delivered materials intended for FirstEnergy Federal to FirstEnergy Family, and vice-versa.

(Baker Decl. ¶18; Daum Dec., Exh. C, ¶¶ 4-11; Movius Decl. ¶ 11.) As a result, numerous third parties mistakenly have disclosed sensitive personal information, including their social security numbers, driver's license numbers, dates of birth, home addresses, and account numbers, and FirstEnergy Family had been forced to devote scarce resources to resolving these occurrences. (Baker Decl. at ¶¶ 19-20.)

Faced with mounting confusion, FirstEnergy Family demanded that FirstEnergy Federal stop using its new, confusingly-similar name. (Baker Decl. ¶ 21.) FirstEnergy Federal refused, forcing FirstEnergy Family to file suit. (*See* Compl., ECF # 1.) In accordance with the Court's October 2, 2012, order (ECF # 21), FirstEnergy Family now moves the Court to enjoin FirstEnergy Federal from using "FirstEnergy Federal Credit Union," "FirstEnergy Federal," "FirstEnergy FCU," "FEFCU," the *FirstEnergyFCU.com* domain name, and any other designation that incorporates or is confusingly similar to any of the FirstEnergy Family Marks.

<u>LAW AND ARGUMENT</u>

## I. <u>FirstEnergy Family Meets the Legal Standard for Injunctive Relief</u>

Courts consider four factors to decide whether to grant a preliminary injunction: (i) plaintiff's likelihood of success on the merits; (ii) whether plaintiff would suffer irreparable harm without an injunction; (iii) whether granting the injunction would cause substantial harm to others; and (iv) whether the public interest would be served by an injunction. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). A district court has broad discretion to grant a preliminary injunction, and the "district court's weighing and balancing of the equities is overruled 'only in the rarest of cases.'" *Id.* at 399-400.

Because trademark infringement causes immediate and irreparable harm, "trademark actions 'are common venues for the issuance of preliminary injunctions.'" *McDonald's Corporation v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (affirming preliminary injunction for trademark owner); *see, e.g., Frisch's*

*Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982) (same). Here, all four factors weigh in favor of injunctive relief.

## II.    The Strength of FirstEnergy Family's Case Favors Injunctive Relief

FirstEnergy Family moves for a preliminary injunction on its trademark infringement claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and Ohio common law. FirstEnergy Family is likely to prevail on the merits of those claims because the FirstEnergy Family Marks are protectable and a likelihood of confusion exists. *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005).

### A.    FirstEnergy Family Owns Protectable Marks

Trademark rights arise through use, not registration. *See Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Whether a trademark is protectable is "determined by where the mark falls along the established spectrum of distinctiveness." *DeGidio v. West Group Corp.*, 355 F.3d 506, 510 (6th Cir. 2004) (internal citations omitted). A mark is distinctive and entitled to protection if it either (1) is inherently distinctive or (2) has acquired distinctiveness (*i.e.*, "secondary meaning"). *Two Pesos*, 505 U.S. at 769. The FirstEnergy Family Marks are protectable under either distinctiveness standard.

A mark is inherently distinctive if its intrinsic nature serves to identify a particular source. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). Thus, fanciful, arbitrary and suggestive marks are inherently distinctive. *Tumblebus*, 399 F.3d at 399 F.3d at 760-61. The FIRSTENERGY FAMILY CREDIT UNION and FIRSTENERGY FAMILY marks are distinctive by their intrinsic

nature because "FirstEnergy Family" neither describes nor connotes the services offered under those marks. *See Commerce Bank & Trust Co. v. TD Banknorth, Inc.,* 554 F.Supp.2d 77, 84 (D. Mass. 2008) (finding COMMERCE BANK inherently distinctive; granting preliminary injunction). The FEFCU and FIRSTENERGY FCU marks and the *fefcu.com* domain name likewise are inherently distinctive because each has no meaning other than to identify FirstEnergy Family's services. The FirstEnergy Family Marks therefore are protectable as inherently distinctive.

Alternatively, the FirstEnergy Family Marks have acquired distinctiveness, or secondary meaning. A mark has secondary meaning if, "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007) (internal quotation omitted). The duration of FirstEnergy Family's continuous use of the FirstEnergy Family Marks, the number of its customers, the amount of its sales, its established place in the market and the amount and manner of its advertising all evidence the distinctiveness of the FirstEnergy Family Marks. *See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 640 n.14 (6th Cir. 2002).

Whereas the Lanham Act *presumes* acquired distinctiveness after five years of continuous use, *see* 15 U.S.C. § 1052(f), FirstEnergy Family has used its marks continuously for more than 14 years. (Baker Decl. ¶¶ 5-11.) Over that period, FirstEnergy Family has developed a well-established place in the market. Its customer base has grown from 3,572 members in 1998 to more than 4,600, and its

asset volume has increased from less than $25 million in 1998 to more than $40 million. (*Id.* ¶¶ 12-13.) FirstEnergy Family continuously has advertised its services using the FirstEnergy Family Marks, including on its website, the pages of which have been viewed nearly 420,000 times since November 2006. (*Id.* ¶ 6; Daum Decl. ¶ 4.) Its marks also have continuously appeared on its annual reports and quarterly newsletters, envelopes, statements, transactional materials (*e.g.*, checks and deposit slips), and other widely-disseminated informational marketing collateral, informational and related materials. (Baker Decl. ¶¶ 5-11.)

FirstEnergy Federal's actual knowledge of FirstEnergy Family, coupled with its knowing decision to adopt a name that is almost identical to the FirstEnergy Family Marks, also evidences their distinctiveness. *See Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991) ("[T]here is no reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence"); *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 603 (6th Cir. 1991) (presumption of intentional copying arises when infringer knew of the senior mark). Moreover, consumers repeatedly have voiced confusion between FirstEnergy Family and FirstEnergy Federal. *See Abercrombie,* 280 F.3d at 640 n.14 (consumer testimony relevant to secondary meaning). The FirstEnergy Family Marks therefore are protectable under both distinctiveness standards.

B. **FirstEnergy Federal Infringes the FirstEnergy Family Marks**

Determining the likelihood of confusion requires weighing eight factors: (1) relatedness of the services; (2) similarity of the marks; (3) evidence of actual confusion; (4) marketing channels used; (5) likely degree of purchaser care; (6)

strength of the plaintiff's mark; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's*, 670 F.2d at 648. These factors "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Homeowners*, 931 F.2d at 1107. Each factor weighs in favor of a finding that ongoing confusion is likely.

### 1.    *The Parties' Services Are Nearly Identical*

Both parties are credit unions and provide nearly identical banking and financial services. This factor therefore favors a finding that confusion is likely.

### 2.    *The Parties' Marks Are Nearly Identical*

"Similarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 283 (6th Cir. 1997). In assessing similarity, courts consider the "pronunciation, appearance, and verbal translation of conflicting marks." *Id*. If, like here, the parties are in direct competition, "confusion is likely if the marks are sufficiently similar." *Id*. at 797. FirstEnergy Federal's marks are more than "sufficiently similar."

The single difference between the parties' names is a simple substitution of "federal" for "family." That is, at most, a minor difference. "Family" and "federal" both start with the "f" and have three syllables, and both sound similar. "Family" and "federal" also are of similar length, so the two names appear nearly identical:

**FirstEnergy Family Credit Union**
**FirstEnergy Federal Credit Union**

Moreover, because both names have the same number of words and "family" and "federal" share the same first letter, both shorten to the same abbreviations and

acronyms, including "FirstEnergy FCU" and "FEFCU." That is significant because FirstEnergy Family and FirstEnergy Federal use the *fefcu.com* and *FirstEnergyFCU.com* domain names, respectively. The similarly of the marks therefore weighs heavily in favor of a finding a likelihood of confusion.

### 3. *Actual Confusion Means More Confusion Is Likely*

Although rare, actual confusion is "undoubtedly the best evidence" of the likelihood of confusion. *Daddy's Junky Music Stores*, 109 F.3d at 280. Indeed, the Sixth Circuit has commented that "it is difficult to conceive of a situation where a showing of actual confusion would not result in a legal conclusion of likelihood of confusion." *Frisch's,* 670 F.2d at 648 n.5.

The actual confusion evidence in this case is overwhelming.

In just 10 months since FirstEnergy Federal adopted its new name, numerous customers of both parties, multiple governmental agencies, and sophisticated third party businesses that routinely deal with financial institutions, including automobile dealers and insurance companies, have been subjectively confused. Objectively, FirstEnergy Federal customer have mistakenly applied for $164,000 in loans from and sent more than $1,265 in deposits to FirstEnergy Family. (Baker Decl. ¶ 18.) Moreover, visitors to FirstEnergy Family's website from Pennsylvania have increased 65.8% since FirstEnergy Federal adopted its new name, and the number of visitors accessing FirstEnergy Family's website using searches that include the word "federal" has increased by 137.3%. (Daum Decl. ¶¶ 4-11.) The actual confusion factor therefore weighs heavily, if not dispositively, in favor of a finding that confusion is likely.

*4.  The Parties' Identical Marketing Channels Promote Confusion*

The "marketing channels" factor examines "the parties' predominant customers and their marketing approaches." *Therma–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002). The parties here market to the very same customers and use the same marketing approaches, namely, distributing materials to actual and potential members in the workplace and using their websites. (Baker Decl. ¶ 5.) This factor therefore favors a finding that confusion is likely.

*5.  Customers' Low Degree of Care Favors Confusion*

FirstEnergy Family and FirstEnergy Federal have the same membership field and their customers have made a conscious decision to bank with a credit union serving that field. Having made that decision, customers likely will exercise a lower degree of care when confronted with the nearly-identical "FirstEnergy Federal Credit Union" name, as shown by the existence of significant actual confusion. This factor therefore weighs in favor of finding a likelihood of confusion..

*6.  The Strength of the Plaintiff's Marks Favors Confusion*

The FirstEnergy Family Marks are both distinctive and commercially strong. As discussed above in detail, FirstEnergy Family has used its marks continuously for 14 years to attract and serve its substantial membership, who have entrusted FirstEnergy Family with tens of millions of dollars in assets. The strength of the FirstEnergy Family Marks therefore favors a likelihood of confusion.

*7.  FirstEnergy Federal's Presumed Bad Intent Favors Confusion*

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners*

*Group*, 931 F.2d at 1111. Such intent is presumed to exist where the junior user has actual knowledge of another's prior use of the mark. *Daddy's Junky Music Stores,* 109 F.3d at 286; *see also Wynn Oil*, 943 F.2d at 603. Here, FirstEnergy Federal admits that it knew of FirstEnergy Family when it chose its new name. Despite that, FirstEnergy Federal neither consulted with counsel nor conferred with FirstEnergy Family before adopting its new name. The Court therefore may presume that FirstEnergy Federal intended to cause confusion and infer confusing similarity. This factor accordingly weighs in favor of finding that confusion is likely.

### 8. *Likelihood That the Parties' Product Lines Will Expand In the Same Way Makes Confusion More Likely To Continue*

Because the parties provide nearly identical credit union services, any future expansions of products or services likely will be the same for both parties. Consequently, this factor weighs in favor of finding a likelihood of confusion.

### 9. *Likelihood Of Confusion Is Undeniable*

All eight factors weigh in favor of finding a likelihood of confusion, which likely explains why there has been extensive marketplace confusion. That harmful confusion is likely, if not certain, to continue without injunctive relief.

## III. **FirstEnergy Federal's Infringement Is Causing Irreparable Harm**

In the Sixth Circuit, "no particular finding of ... irreparable harm is necessary for injunctive relief in trademark infringement ... cases." *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). Rather, irreparable harm may be inferred "when there is a likelihood of confusion or possible risk to [the plaintiff's] reputation." *Id.* (internal quotations omitted). Such harm arises because confused

customers attribute the quality and nature of the infringer's goods and services, which the owner cannot control, to the owner. *Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743, 756 (S.D. Ohio 2010). Thus, in trademark cases, "[o]nce a moving party has demonstrated a likelihood of confusion, a finding of irreparable injury ordinary follows." *Id.* at 755, citing *Wynn Oil*, 943 F.2d at 608.

FirstEnergy Federal's infringement is causing irreparable harm. FirstEnergy Family has spent 14 years building a strong reputation and earning the trust of its customers. If FirstEnergy Federal continues to confuse actual and potential customers into thinking it is the same as or affiliated with FirstEnergy Family, people will incorrectly equate the two parties. That confusion materially disrupts FirstEnergy Family's relationship with actual and potential customers in ways that FirstEnergy Family cannot control, and continued confusion will further and irreversibly alter and further harm FirstEnergy Family's reputation and goodwill. *See Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir. 1992) (losses of goodwill, client trust and confidence constitute irreparable harm). The irreparable harm factor therefore weighs in favor of an injunction.

## IV.     The Harm To Others Factor Favors Injunctive Relief

Where, as here, a trademark plaintiff has shown a "likelihood of success, the 'harm to others' factor of the preliminary injunction standard would normally favor the plaintiff as well." *Ohio State*, 738 F. Supp. 2d at 756, quoting *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1462 (S.D. Ohio 1990). Because FirstEnergy Family and FirstEnergy Federal are financial institutions, the confusion is especially harmful to others. Innocent third parties are being duped

into sending sensitive personal information, including account and social security numbers, to the wrong institutions. Customers also are misdirecting loan applications and deposits, which directly interferes with their banking relationships by depriving them of access to their funds until their mistakes are detected and then corrected. An injunction would end this third-party harm, while still allowing FirstEnergy Federal to compete fairly using a non-confusing name. This factor therefore weighs in favor of injunctive relief.

## V.     The Public Interest Favors Injunctive Relief

Finally, an injunction would serve the public interest by "halt[ing] confusion in the marketplace." *Ohio State*, 738 F. Supp. 2d at 756-57; *cf. Big Boy Rest. v. Cadillac Coffee Co.*, 238 F. Supp. 2d 866, 873 (E.D. Mich. 2002) ("Trademark infringement, by its very nature, adversely affects the public interest in the 'free flow' of truthful commercial information."). That is particularly true in the case of a credit union, as both the federal government and the Ohio General Assembly have enacted laws prohibiting credit unions from using confusingly similar names. *See* Ohio Rev. Code § 1733.07(A)(1)(a) (credit union may not choose name "so similar to the name of an existing credit union as to be likely to mislead the public"); 12 C.F.R. § 701, Appx. B, Section V, at 1-5 (requiring credit union organizers "to ensure that the proposed corporate federal credit union name does not constitute an infringement on the name of any corporation in its trade area" and requiring organizers to "research[] any service marks or trademarks used by any other corporation (including credit unions) in its trade area"). Thus, an injunction would

end confusion, remedy FirstEnergy Federal's failure to comply with its affirmative obligation to avoid infringement, and thereby serve the public interest.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should grant FirstEnergy Family's motion and enter a preliminary injunction enjoining FirstEnergy Federal from using "FirstEnergy Federal Credit Union," "FirstEnergy Federal," "FirstEnergy FCU," "FEFCU," the *FirstEnergyFCU.com* domain name, and any other designation that incorporate or is confusingly similar to any of the FirstEnergy Family Marks.

Respectfully submitted,

Dated: October 16, 2012

_____/s/ David T. Movius_____
David T. Movius (OH 0070132)
*dmovius@mcdonaldhopkins.com*
Matthew J. Cavanagh (OH 0079522)
*mcavanagh@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

*Counsel for FirstEnergy*
*Family Credit Union*

## Certificate of Service

I hereby certify that a copy of ***FirstEnergy Family Credit Union, Inc.'s Motion for Preliminary Injunction*** and ***Memorandum in Support*** were electronically served using the Court's Electronic Case Filing (ECF) system. The parties have been served by electronic notice through the Court's ECF system.

/s/ David T. Movius
One of the Attorneys for Defendants
