UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FirstEnergy Family Credit Union, Inc., | Case No. 5:12-cv-0864 |
| Plaintiff, | Judge Benita Y. Pearson |
| vs. | |
| FirstEnergy Federal Credit Union, | |
| Defendant. | |

**FirstEnergy Family Credit Union, Inc.'s Motion
for Order to Show Cause and Request for Expedited Consideration**

FirstEnergy Family Credit Union moves the Court for an order requiring FirstEnergy Federal Credit Union to appear and show cause on or before November 16, 2012, as to why it should not be held in contempt of the Court's November 7, 2012, preliminary injunction order (the "Preliminary Injunction") (Docket No. 39). The Court should grant this motion and hold FirstEnergy Federal in contempt because, despite entry and service of the Preliminary Injunction six days ago, FirstEnergy Federal continues using "FirstEnergy Federal Credit Union," "FirstEnergy Federal," "FirstEnergy FCU," "FEFCU" and the *FirstEnergyFCU.com* domain name in contravention of the express prohibitions of that order.

Considering FirstEnergy Federal's continuing infringement notwithstanding the Court's entry of the Preliminary Injunction, further coercive measures are warranted to compel FirstEnergy Federal's compliance. In particular, FirstEnergy Family recommends that the Court impose a fine of at least $1,000 per day that FirstEnergy Federal remains noncompliant, invoke the "safe distance rule" to order

{4046880:}

that FirstEnergy Federal may not use the compound word "FirstEnergy" to comply with the Preliminary Injunction, order FirstEnergy Federal to pay FirstEnergy Family's fess and expenses incurred in connection with this motion, and find that this case is "exceptional" under 15 U.S.C. § 1117(a).

Finally, FirstEnergy Family respectfully requests the Court expedite its consideration of this motion and to set a hearing on or before Friday, November 16, 2012. The Preliminary Injunction embodies a finding by the Court found that FirstEnergy Federal's new name is causing irreparable harm. Expedited enforcement therefore is warranted because FirstEnergy Federal has yet to comply with the Preliminary Injunction. Moreover, counsel for FirstEnergy Family will be unavailable the following week. An expedited hearing therefore is warranted to put an immediate stop to the irreparable harm that FirstEnergy Federal's continuing contempt of the Preliminary Injunction.

A memorandum in support is submitted herewith.

Respectfully submitted,

Dated: November 12, 2012        /s/ David T. Movius
               David T. Movius (OH 0070132)
                *dmovius@mcdonaldhopkins.com*
               Matthew J. Cavanagh (OH 0079522)
                *mcavanagh@mcdonaldhopkins.com*
               MCDONALD HOPKINS LLC
               600 Superior Avenue, East, Ste. 2100
               Cleveland, Ohio 44114
               t 216.348.5400 │ f 216.348.5474

               *Counsel for FirstEnergy*
               *Family Credit Union*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FirstEnergy Family Credit Union, Inc., | Case No. 5:12-cv-0864 |
| Plaintiff, | Judge Benita Y. Pearson |
| vs. | |
| FirstEnergy Federal Credit Union, | |
| Defendant. | |

**Memorandum in Support of FirstEnergy Family Credit Union, Inc.'s Motion for Order to Show Cause and Request for Expedited Consideration**

FirstEnergy Family respectfully submits this memorandum in support of its Motion for Order to Show Cause and Request for Expedited Consideration

## Background

FirstEnergy Family filed this case and moved the Court to enter a preliminary injunction to end the rampant confusion being caused by FirstEnergy Federal's adoption and use of a new name that is confusingly similar to the name and marks that FirstEnergy Family has been using for more than 14 years.

With the benefit of extensive briefing and evidentiary submissions, and having afforded the parties the opportunity to present additional evidence and arguments at a November 6, 2012, hearing, the Court granted FirstEnergy Family's motion and enjoined FirstEnergy Federal from using "FirstEnergy Federal Credit Union," "FirstEnergy Federal," "FirstEnergy FCU," "FEFCU" and the *FirstEnergyFCU.com* domain name and any other designation that incorporates or is confusingly similar to any of the FirstEnergy Family Marks (Docket No. 39) (the

{4046880:}

"Preliminary Injunction"). By its terms, the Preliminary Injunction became effective and enforceable on November 7, 2012, the date of its entry by the clerk, and FirstEnergy Family has deposited $10,000 with the Court as security for the Preliminary Injunction (*see* November 13, 2012, docket entry).

Although the Preliminary Injunction became effective and enforceable immediately upon its entry, FirstEnergy Family voluntarily has tried to work with FirstEnergy Federal in good faith for nearly a week to facilitate an orderly transition to a new name that does not cause confusion with respect to the FirstEnergy Family Marks. Counsel for FirstEnergy Family initiated communication with FirstEnergy Federal's counsel the day the Court entered the Preliminary Injunction, indicating that it would not seek immediate enforcement of the Preliminary Injunction if FirstEnergy Federal would work promptly and in good faith to adopt a new name in connection with a global resolution of this case. (Declaration of David Movius, Esq., Exhibit A, at ¶ 2.) FirstEnergy Federal's counsel responded that FirstEnergy Federal would provide a substantive plan for complying with the Preliminary Injunction the following morning after a meeting of its board of directors that evening. (*Id.*)

Despite that promise, the next communication from FirstEnergy Federal was not a substantive plan on how it would comply with the Preliminary Injunction. Instead, later that evening, FirstEnergy Federal filed what it called a "Motion to Stay or, in the Alternative, Modify, the Injunction Order" (Docket No. 40), by which it asks the Court to reconsider matters that it already decided in granting the

{4046880;}                                    2

Preliminary Injunction, including when the Preliminary Injunction would become effective. (FirstEnergy Federal has not, however, appealed the Preliminary Injunction.) While FirstEnergy Family opposes that motion and will respond within the time allowed by Local Rule 7.1(d), if necessary, FirstEnergy Federal's motion is not self-executing and the Preliminary Injunction remains in effect.

FirstEnergy Federal did not provide a substantive plan for complying with the Preliminary Injunction the next day as it had promised, or even the day after that. (Movius Dec. ¶ 3.) Nonetheless, FirstEnergy Family continued working with FirstEnergy Federal in good faith, trying to reach an agreement to resolve this case without the need to further involve the Court. (*Id.*) In the course of several conversations over the next two days, FirstEnergy Family indicated that its position remained essentially the same as it was at the Case Management Conference in August and the mediation before Magistrate Judge Limbert in September: it would settle its claims if FirstEnergy Federal promptly adopted a new, non-confusingly similar name and paid FirstEnergy Family an amount sufficient to compensate it for the harm it has caused, including its fees and expenses incurred in connection with this case. (*Id.* ¶ 4.) FirstEnergy Family further indicated that, while it had not yet determined the precise amount, those fees were well in excess of $100,000 due to the recent motion practice FirstEnergy Federal had necessitated. (*Id.*)

FirstEnergy Family finally received FirstEnergy Federal's post-Preliminary Injunction settlement proposal on Monday, November 12—four days after it was initially promised. (Movius Dec. ¶ 5.) While FirstEnergy Federal offered to adopt a

new name, it did not actually identify a new name. (*Id.*) Nor did FirstEnergy Federal propose a timeframe for when it would adopt a new name. (*Id.*) Finally, FirstEnergy offered to pay just $30,000—less than half of FirstEnergy Family's demand at the mediation before moving for a preliminary injunction and opposing FirstEnergy Federal's motion to dismiss, and several times less than what FirstEnergy Family indicated would be necessary just one business day prior. (*Id.*)

With FirstEnergy Federal's proposal finally in hand, counsel for FirstEnergy Family promptly contacted counsel for FirstEnergy Federal and explained that the settlement proposal was insufficient because it did not identify a proposed name or an acceptable implementation timeline and the proposed payment was woefully insufficient. (Movius Dec. ¶ 6.) Counsel for FirstEnergy Federal then indicated that, despite knowing that an injunction was possible (if not likely) for months, it had not settled on any potential new names or even contacted NCUA, the federal regulatory agency responsible for approving a new name. (*Id.* ¶ 7.) Finally, FirstEnergy Family provided FirstEnergy Family's bottom-line settlement demand and indicated that it would move to enforce the Preliminary Injunction motion unless FirstEnergy Federal agreed to promptly comply with its terms, to which counsel for FirstEnergy Federal responded that he would confer with his client and its insurance carrier and respond "shortly" that afternoon. (*Id.* ¶ 8.)

Unfortunately, FirstEnergy Federal did not respond that afternoon, or even today. (Movius Dec. ¶ 9.) Instead, FirstEnergy Federal's next communication was a transmittal email providing a courtesy copy of a subpoena that it had already

{4046880;} 4

propounded earlier that morning on FirstEnergy Corp., in which it unilaterally set a date, time and location without conferring with counsel for FirstEnergy Family as required by Local Rule 30.1(b)(1). (*Id.*) According to the exhibit to the subpoena, FirstEnergy Federal is seeking discovery relating to its Motion to Dismiss that the Court previously denied, including a deposition of a FirstEnergy Corp. designee regarding the following topics:

1. Ownership of any trademark, trade name or any other similar identifier that includes FIRSTENERGY and/or "First" and "Energy" in relation to the provision of credit union services;

2. All details and circumstances surrounding the April 2001 agreement between FirstEnergy Corp. and FirstEnergy Capital Corp. and FirstEnergy Capital (USA) Corp. regarding the use of marks containing the word "FirstEnergy" to identify credit union and other money-lending services offered solely to the employees and retirees of FirstEnergy Corp. and its affiliates and subsidiaries;

3. All licensing arrangements between FirstEnergy Corp. and either Plaintiff or Defendant, including draft licensing agreements and the terms and provisions thereof, and communications relating to same; and

4. All communications with Plaintiff regarding FirstEnergy Corp.'s ownership and/or use of the FIRSTENERGY mark, including communications since the initiation of this litigation, and communications pertaining to tis litigation.

(Movius Dec. ¶ 9.) That deposition, which if it goes forward will be the first that FirstEnergy Federal takes in this case, presently is scheduled for November 16, 2012—the final day of fact discovery.

FirstEnergy Federal's conduct demonstrates that it is more interested in avoiding the Court-ordered consequences of its actions and running up FirstEnergy Family's legal fees by re-litigating issues that the Court already has decided than it

is in complying with the Preliminary Injunction or working with FirstEnergy Family to secure an agreement for an orderly transition to a new name. FirstEnergy Family therefore has been left with no choice but to file this motion seeking an order compelling FirstEnergy Federal to appear and show cause why it should not be held in contempt for violating the Preliminary Injunction.

## Law and Argument

### I. The Court Should Issue an Order to Show Cause and Find FirstEnergy Federal in Contempt of the Preliminary Injunction

"The power of courts to punish for contempt[] is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590-91 (6th Cir. 1987) (*quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)). The purpose of civil contempt proceedings is to enforce the notion that "all orders and judgments of courts must be complied with promptly." *Cincinnati Bronze*, 829 F.2d at 590.

To establish contempt, the charging party must prove the existence of a court order and show that the respondent's conduct violated its terms. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (stating that the plaintiff "had the burden of establishing by clear and convincing evidence that the [defendants] 'violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'"). The Court should grant FirstEnergy Family's motion and hold FirstEnergy Federal in contempt because the Preliminary Injunction constitutes a

binding and enforceable order by the Court and FirstEnergy Federal's conduct—or lack thereof—has violated its terms.

The Preliminary Injunction unambiguously enjoins FirstEnergy Federal "from using 'FirstEnergy Federal Credit Union,' 'FirstEnergy Federal,' 'FirstEnergy FCU,' 'FEFCU' and the *FirstEnergyFCU.com* domain name, and any other designation that incorporates or is confusingly similar to any of the 'FirstEnergy Family Marks.'" (Preliminary Injunction ¶ 1.) FirstEnergy's post-injunction conduct violates the terms of that order because it continues to use the expressly-forbidden names and designators expressly. For example, the home page for FirstEnergy Federal's website, located at the *FirstEnergyFCU.com* domain name, includes multiple instances of the "FirstEnergy Federal Credit Union" name. (Movius Dec. ¶ 10.) FirstEnergy Federal also continues to use the "FirstEnergy Federal Credit Union" name in connection with checking account applications, check withdrawal requests, deposit/payment slips, employment applications, loan applications, membership applications, transfer requests, and Visa card applications. (*Id.* ¶ 11.) The evidence therefore establishes both the existence of a court order and that FirstEnergy has violated its terms such that the Court should hold it in contempt.

## II. The Court Should Fine FirstEnergy Federal, Order That It Cannot Use the Word "FirstEnergy" in its Name, and Award FirstEnergy Family its Attorneys' Fees and Costs

"The measure of the Court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949). The Court thus acts within its discretion if its remedy is coercive or remedial, as opposed to penal. *NLRB v. Aquabrom, Div. of*

*Great Lakes Chemical Corp.*, 855 F.2d 1174, 1187 (6th Cir. 1988). The Court also may award attorney's fees and costs incurred prosecuting the contempt proceedings. *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985). A remedial order fining FirstEnergy Federal, precluding it from using the word "FirstEnergy" in its name, and awarding FirstEnergy Family its attorneys' fees and costs is warranted.

Courts routinely impose coercive fines where a trademark defendant fails to comply with the terms of an injunction. *See, e.g., Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (affirming civil fine for contempt of trademark injunction); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 280 (S.D.N.Y. 2009) (imposing $1,000 per incident fine for violation of trademark injunction); *Premium Nutritional Products, Inc. v. Ducote,* 571 F. Supp. 2d 1216, 1221 (D. Kan. 2008) (imposing $1,000 per day fine for violation of trademark injunction). Because FirstEnergy Federal has failed to comply with the Preliminary Injunction and has not otherwise indicated how or when it intends to do so, FirstEnergy Family recommends that the Court impose a coercive fine of at least $1,000 per day that FirstEnergy Federal remain in contempt of the Preliminary Injunction, with that fine payable immediately to FirstEnergy Family.

FirstEnergy Family further asks the Court to invoke the "safe distance rule" in response to FirstEnergy Federal's contempt and order that, in complying with the Preliminary Injunction, FirstEnergy Federal cannot use the compound word "FirstEnergy" as a part of whatever new name it chooses. The "safe distance rule" was first articulated by the Sixth Circuit in 1930, as follows:

> [A] competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves.

*Broderick & Bascom Rope Co. v. Manoff,* 41 F.2d 353, 354 (6th Cir. 1930). Thus, permitting a proven infringer to continue business with only a slight change to its mark "is to make the decree futile and to disparage the power of the court to give relief against trademark larceny." *Id.* That is particularly true in a contempt proceeding, where the infringer already has demonstrated an unwillingness to comply with its legal obligations. *See Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.,* 282 F.3d 23, 40-41 (1st Cir. 2002) (applying "safe distance rule" following contempt proceeding). Therefore, while FirstEnergy Family did not originally ask the Court to bar FirstEnergy Federal from continuing to use the "FirstEnergy" element, FirstEnergy Federal's contempt of the Preliminary Injunction merits such a restriction to ensure that it keeps a "safe distance" from causing further confusion with FirstEnergy Family when it finally complies with that order.

  The Court also should award FirstEnergy Family its fees and expenses incurred to bring this motion. *See In re Jaques*, 761 F.2d at 306. The Court also should find that, in view of FirstEnergy Federal's contempt and its continuing infringement, this is an "exceptional" under 15 U.S.C. § 1117(a), such that FirstEnergy Family will be entitled to recover its attorneys' fees in the event FirstEnergy Federal ultimately is found liable after a trial on the merits. Although the Lanham Act does not define what constitutes an "exceptional" case, the Sixth Circuit has held that a case is "exceptional" if "the infringement was malicious,

{4046880:}                     9

fraudulent, willful, or deliberate." *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004). FirstEnergy Federal's continued infringement in the face of the Court's Preliminary Injunction qualifies as malicious, willful and deliberate. The Court therefore should find that this case is "exceptional" under 15 U.S.C. § 117(a) in recognition of FirstEnergy Federal's conduct to date and to further coerce FirstEnergy Federal's compliance with the Preliminary Injunction going forward.

### III. The Court Should Set an Expedited Hearing on FirstEnergy Family's Motion on or Before November 16, 2012

Finally, FirstEnergy Family respectfully asks that the Court consider this motion on an expedited basis and set a hearing on or before Friday, November 16, 2012. The Preliminary Injunction embodies a finding by the Court found that FirstEnergy Federal's adoption and use of its new name is causing FirstEnergy Family irreparable harm. Expedited consideration and enforcement therefore is warranted, as six days already have passed and FirstEnergy Federal has yet comply with the Preliminary Injunction or even indicate how or when it plans to do so

An expedited hearing further is requested for this week because counsel for FirstEnergy Family will be unavailable the entire following week due to a previously-scheduled meeting on Monday with a client who is travelling from Australia, followed by travel the remainder of the week to Washington, D.C., for the Thanksgiving holiday. (Movius Dec. ¶ 12.) Therefore, unless the Court grants this motion without a hearing or holds a hearing this week, FirstEnergy Federal effectively will be able to avoid complying with the Preliminary Injunction until at least November 26, 2012, or nearly 20 days after entry of that order.

FirstEnergy Family notes that counsel for FirstEnergy Federal should be available for a hearing on Friday, November 16, 2012, because it has unilaterally subpoenaed a deposition of FirstEnergy Corp. for that day. Assuming FirstEnergy Federal does not agree to withdraw its subpoena FirstEnergy Family will be moving to quash it or for a protective order deferring that deposition until after the Court rules on this motion. Therefore, FirstEnergy Family respectfully requests that Court order an expedited hearing on FirstEnergy Family's motion on or before November 16, 2012, to put an immediate stop to the irreparable harm that FirstEnergy Federal continues to cause in contempt of the Preliminary Injunction.

## Conclusion

For the foregoing reasons, the Court should grant FirstEnergy Family's motion and enter an order compelling FirstEnergy Federal to appear before it on or before November 16, 2012, and show cause as to why it should not be held in contempt of the Court's November 7, 2012, preliminary injunction order.

Dated: November 13, 2012

Respectfully submitted,

/s/ David T. Movius
David T. Movius (OH 0070132)
  *dmovius@mcdonaldhopkins.com*
Matthew J. Cavanagh (OH 0079522)
  *mcavanagh@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

*Counsel for FirstEnergy Family Credit Union*

## Certificate of Service

I hereby certify that a copy of the foregoing *Motion to Show Cause and Request for Expedited Consideration* and *Memorandum in Support* was electronically served using the Court's Electronic Case Filing (ECF) system and the parties have been served by electronic notice through the Court's ECF system.

      /s/ David T. Movius
*One of the Attorneys for*
*FirstEnergy Family Credit Union*