UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FirstEnergy Family Credit Union, Inc.,

> Plaintiff,

vs.

FirstEnergy Federal Credit Union,

> Defendant.

Case No. 5:12-cv-0864

Judge Benita Y. Pearson

## Brief in Opposition to FirstEnergy
## Federal Credit Union's Motions to Stay

The Court should deny both of defendant FirstEnergy Federal Credit Union's motion to stay the preliminary injunction entered by the Court on November 6, 2012 (Docket Nos. 40 and 43) because FirstEnergy Federal cannot satisfy the four-factor test for determining whether a stay is appropriate. If, however, the Court concludes that a stay is warranted, FirstEnergy Family asks that it condition the stay upon FirstEnergy Federal posting a bond of at least $350,000 as security.

## Background

FirstEnergy Family filed this case and moved the Court for entry of a preliminary injunction to end the rampant confusion being caused by FirstEnergy Federal's adoption and use of a new name that is confusingly similar to the name and marks that FirstEnergy Family has been using for more than 14 years.

With the benefit of extensive briefing and evidentiary submissions, and having afforded the parties the opportunity to present additional evidence and arguments at the November 6, 2012, hearing, the Court granted FirstEnergy

Family's motion and enjoined FirstEnergy Federal from using "FirstEnergy Federal Credit Union," "FirstEnergy Federal," "FirstEnergy FCU," "FEFCU" and the *FirstEnergyFCU.com* domain name and any other designation that incorporates or is confusingly similar to any of the FirstEnergy Family Marks (Docket No. 39) (the "Preliminary Injunction"). By its terms, the Preliminary Injunction became effective and enforceable on November 7, 2012, the date of its entry by the clerk, and FirstEnergy Family has deposited $10,000 with the Court as security for the Preliminary Injunction (*see* November 13, 2012, docket entry).

Although the Preliminary Injunction has been in place for a full week, FirstEnergy Federal continues to use its infringing name and related designators in exactly the same manner as it did prior to entry of the Preliminary Injunction. For example, as set forth in support of FirstEnergy Family's show cause motion (Docket No. 41), the home page for FirstEnergy Federal's website, located at the *FirstEnergyFCU.com* domain name, includes multiple instances of the "FirstEnergy Federal Credit Union" name, and FirstEnergy Federal continues to use the "FirstEnergy Federal Credit Union" name in connection with checking account applications, check withdrawal requests, deposit/payment slips, employment applications, loan applications, membership applications, transfer requests, and Visa card applications.

FirstEnergy Federal filed its first post-injunction motion on November 7, 2012, asking the Court to stay the Preliminary Injunction for 90 days or, in the alternative, to stay essentially the entire Preliminary Injunction "until the

conclusion of this litigation" (Docket No. 40). FirstEnergy Federal did not, however, immediately stop its infringement as required by the Preliminary Injunction, thereby forcing FirstEnergy Family to move the Court for an order to show cause (Docket No. 41). Now faced with having to account for both its infringement and its contempt of the Preliminary Injunction, FirstEnergy Federal has noticed an interlocutory appeal to the Sixth Circuit Court of Appeals (Docket No. 42) and filed a second motion stay, this time asking the Court to stay the Preliminary Injunction pending the resolution of its appeal (Docket No. 43).

Despite twice moving the Court for a stay of the Preliminary Injunction, FirstEnergy Federal addresses only one of the four factors that must be considered to determine whether a stay is appropriate—the prejudice it allegedly would suffer in the absence of a stay—and it does not even offer any evidence to support its arguments on that single factor. The Court therefore should deny both of FirstEnergy Federal's motions and proceed with enforcement of the Preliminary Injunction as requested by FirstEnergy Family in its show cause motion.

## Law and Argument

Determining whether a stay of a preliminary injunction pending an interlocutory appeal is warranted under Federal Rule of Civil Procedure 62(c) requires consideration of the following four factors: (i) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (ii) whether the applicant will be irreparably injured absent a stay; (iii) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (iv)

where the public interest lies. *See Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). While these factors are not prerequisites that individually must be met, they all interrelated considerations that the Court must weigh and balance as a whole. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991).

Notably, these are essentially the same four factors that FirstEnergy Family established to obtain issuance of the Preliminary Injunction in the first instance. *See Michigan Coalition,* 945 F.2d at 153. The balancing of those factors, however, is not identical now that FirstEnergy Federal is moving to stay that injunction, as it bears the burden of establishing that those factors now weigh in its favor. *See U.S. Student Ass'n Foundation v. Land,* 546 F.3d 373, 380 (6th Cir. 2008). The weight of that burden is greater than the burden carried by FirstEnergy Family because FirstEnergy Federal must establish that it is likely to prevail before the Court of Appeals, where the Court's entry of the Preliminary Injunction will be accorded significant deference and reviewed for abuse of discretion. *See Obama for America v. Husted,* --- F.3d ---, 2012 WL 4753397 at *3 (6th Cir. 2012).

The Court should deny both of FirstEnergy Federal's motions to stay because it has not carried its burden of establishing that a stay of any duration is warranted upon consideration of the likelihood that it will succeed on the merits of its appeal, the irreparable injury it claims that it will suffer in absence of a stay, the substantial injury that FirstEnergy Family and the public will suffer if a stay is granted, and the public interest.

## I.     FirstEnergy Federal's Appeal Is Unlikely to Succeed

As the party seeking a stay, FirstEnergy Federal must show a strong or substantial likelihood of success on appeal. *See State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Com'n,* 812 F.2d 288, 290 (6th Cir. 1987). Thus, at a minimum it must identify "serious questions going to the merits[.]" *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Based on the deferential standard of review accorded preliminary injunction rulings, that requires FirstEnergy Federal to show that the Court abused its discretion in granting the Preliminary Injunction, that its factual findings constitute "clear error" or that it misapplied the law. *See Obama for America*, 2012 WL 4753397 at *3. FirstEnergy Federal, however, does not address at all the merits of its appeal, much less identify any purported abuse of discretion or error by the Court that could lead to reversal of the Preliminary Injunction. This factor therefore weighs heavily against granting a stay.

## II.    FirstEnergy Federal Will Not Be Irreparably Harmed Absent a Stay

In evaluating the harm that will occur if a stay is denied, courts generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Ohio ex rel. Celebrezze*, 812 F.2d at 290. In evaluating the degree of injury:

> [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quotation omitted). In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical. *See Michigan Coalition,* 945 F.2d at 153. The movant therefore must provide some evidence that the harm about which it complains has occurred in the past and is likely to occur again. *Id.*

FirstEnergy Federal devotes nearly all of both motions to arguing the harm that it supposedly will suffer if a stay is not granted. According to FirstEnergy Federal, the fact that it is regulated by the National Credit Union Administration ("NCUA") and must use its name in connection with certain transactions means that complying with the injunction will force it to "violate the law." FirstEnergy Federal does not, however, support its argument with law or evidence, but instead relies only on attorney argument. The inadequacy of FirstEnergy Federal's evidence therefore weighs against a finding that it would be irreparably harmed in the absence of an injunction, especially since the Court directed questions on these issues to both parties during the November 6, 2012, preliminary injunction hearing.

FirstEnergy Federal's failure to provide any supporting evidence means that it cannot satisfy the other two factors relevant to the irreparable harm inquiry. It does not, for example, identify or cite what NCUA regulations it would violate if it were to comply with the Preliminary Injunction or identify what consequences, if any, it would suffer for such a violation or whether it could mitigate those consequences in any way. FirstEnergy Federal also does not provide any evidence of how long it would take to implement a name change with NCUA's cooperation or

what steps it could take to expedite that process. The record therefore does not include any evidence on which the Court could assess the substantially of the injury FirstEnergy Federal alleges or the likelihood that it will occur. FirstEnergy Federal therefore has not established that it would suffer irreparable harm absent a stay.

In contrast, FirstEnergy Family previously identified the relevant NCUA regulations showing that any prejudice FirstEnergy Federal may suffer is of its own making and certainly is not irreparable. Under NUCA's "Chartering and Field of Membership Manual," FirstEnergy Federal had the affirmative obligation

> to ensure that [its] federal credit union name change does not constitute an infringement on the name of any corporation in its trade area. This responsibility also includes researching any service marks or trademarks used by any other corporation (including credit unions) in its trade area.

12 C.F.R.  701, Appx. B, Section V, at 1-5. FirstEnergy Federal did not comply with this obligation, which would have almost certainly obviated the need for this proceeding, despite knowing of FirstEnergy Family at the time it adopted its new name. It therefore should not be heard to complain that the entirely foreseeable consequences of its own failure will cause it "irreparable" harm.

Finally, FirstEnergy Family's willingness to work with FirstEnergy Federal in good faith to negotiate a graceful transition to a new name mitigates FirstEnergy Federal's claim would suffer irreparable harm absent a stay. FirstEnergy Family repeatedly has indicated that will settle[1] if FirstEnergy Federal agrees to transition to a new, non-confusingly similar name within a reasonable time and reasonably compensates FirstEnergy Family for the harm that it has suffered, including its

---

[1] Subject, of course, to a definitive, written agreement and consent injunction.

fees and expenses to date. While FirstEnergy Federal may not like what FirstEnergy Family has proposed, the fact remains that it has within its power the ability to completely eliminate the possibility of prejudice by agreeing to the terms FirstEnergy Family has been offering since before the Case Management Conference in August. The potential harm about which FirstEnergy Federal complains therefore is not irreparable and this factor weighs against a stay.

## III.     FirstEnergy Family and the Public Will Be Harmed by a Stay

FirstEnergy Federal does not address this factor at all in either of its stay motions, so the Court can presume that the harm to third parties factor weighs against a stay of the Preliminary Injunction. But the Court need not rely on that presumption alone because the record includes substantial evidence that FirstEnergy Family and the parties' actual and potential customers have suffered actual and irreparable harm that will continue if a stay is granted.

That a stay will harm FirstEnergy Family and third parties is not merely hypothetical. In the one week since the Court entered the Preliminary Injunction (during which FirstEnergy Federal has disregarded its obligation under that order), FirstEnergy Family learned that yet another sophisticated insurance company issued a Proof of Insurance certificate to one of its members that incorrectly identified FirstEnergy Federal as the lienholder.[2] That is in addition to the many instances of actual confusion FirstEnergy Family previously documented, including the $164,000 in loans that FirstEnergy Federal customers mistakenly have applied

---

[2] A true and accurate copy of that Proof of Insurance certificate is being filed herewith under seal as Exhibit A to protect the confidentiality of FirstEnergy Family's member's personal information, including its name and address, Vehicle Identification Number and Policy Number.

for using FirstEnergy Family's website, the $1,265 in deposits that FirstEnergy Federal customers have mistakenly sent FirstEnergy Family, the drastic change to the visitors to FirstEnergy Family's website, and the multiple car dealers, state title bureaus and insurance companies that have confused FirstEnergy Federal and FirstEnergy Family. (*See* Docket No. 28.) That is precisely the type of irreparable harm that an injunction is meant to halt, and the fact that additional confusion already has occurred since the Court entered the Preliminary Injunction is compelling evidence that a stay should not be granted.

The harm that third parties will suffer also weighs against a stay. As FirstEnergy Family demonstrated in support of its injunction motion, the actual confusion FirstEnergy Federal is creating has caused numerous third parties to mistakenly disclose sensitive personal information, including social security and driver's license numbers, dates of birth, home addresses, and account numbers. FirstEnergy Federal has recognized the harm that such disclosures can cause, as shown by the following warning it gives to its members:

> Use caution when disclosing your account numbers, Social Security numbers, etc. to other persons. If someone calls you explaining the call is on behalf of the credit union and asks for your account number, be aware that official credit union staff will have access to your information and will not need to ask for it.

(FirstEnergy Federal Privacy Policy, attached as Exhibit B.) Unfortunately, that warning has been insufficient, as its members have demonstrated that they are likely to disclose significant personal information to FirstEnergy Family by mistake. The harm to FirstEnergy Family and third parties therefore weighs against a stay of the Preliminary Injunction.

## IV.  The Public Interest Weighs Against a Stay

Finally, the public interest weighs in favor of denying FirstEnergy Federal's motions. Courts widely recognize that injunctions in trademark cases serve the public interest by "halt[ing] confusion in the marketplace." *Ohio State,* 738 F. Supp. 2d at 756-57; *cf. Big Boy Rest. v. Cadillac Coffee Co.,* 238 F. Supp. 2d 866, 873 (E.D. Mich. 2002) ("Trademark infringement, by its very nature, adversely affects the public interest in the 'free flow' of truthful commercial information."). FirstEnergy Federal does not identify any countervailing public interest that would be served by a stay, so it stands undisputed that the public interest weighs against a stay.

## V.  The Court Should Require A Substantial Bond if it Grants a Stay

FirstEnergy Family respectfully submits that all four factors weigh against staying the Preliminary Injunction. If, however, the Court concludes that a stay is warranted, it should require FirstEnergy Federal to post bond of at least $350,000 and hold FirstEnergy Federal accountable for its pre-stay contempt of the Preliminary Injunction, as its notice of interlocutory appeal does not divest the Court of its jurisdiction over FirstEnergy Family's show cause motion. *See Zundel v. Holder,* 687 F.3d 271, 282 (6th Cir. 2012).

Federal Rule of Civil Procedure 62(c) permits the Court to stay or modify the Preliminary Injunction only "on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). The amount of a bond required to stay a preliminary injunction lies within the sound discretion of the Court. *See In re Cardizem CD Antitrust Litigation,* 391 F.3d 812, 818 (6th Cir. 2004); *Aluminum*

*Workers Int'l v. Consol. Aluminum Corp.,* 696 F.2d 437, 446 (6th Cir. 1992). At a minimum, the bond should cover the harm resulting from the delay in enforcing the injunction. *See Dayton Christian Schools v. Ohio Civil Rights Comm'n,* 604 F. Supp. 101, 105 (S.D. Ohio 1984). *See also Savedoff v. Access Group, Inc.,* No. 1:06-cv-135, 2007 WL 1703566, at *2 (N.D. Ohio June 12, 2007) (ordering defendant to post $700,000 bond for stay of injunction despite finding that "neither Plaintiff nor the class generally will suffer significant harm if the Court grants a stay.").

Here, a bond of at least $350,000 is warranted in the event the Court finds that a stay of the preliminary injunction is warranted. By definition, the irreparable harm that FirstEnergy Family continues to suffer cannot be remedied in full by monetary damages, so it cannot specifically quantify an amount that would make it whole if a stay is granted and the Preliminary Injunction is upheld on appeal. The record, however, includes evidence of at least $164,000 in mistaken loan applications and more than $1,265 in misdirected checks since FirstEnergy Federal adopted its new name. The bond therefore should cover at least that amount to cover the actual harm that likely will accrue during the pendency of FirstEnergy Federal's appeal, which should take about 15.3 months to resolve. *See* Judicial Business of the United States Courts, 2011 Annual Report of the Director, Table B-4, *available at* http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/B04Sep11.pdf.

Moreover, because the Lanham Act includes a fee-shifting provision, 15 U.S.C. § 1117(a), and FirstEnergy Family has requested a finding that this case is

"exceptional," any bond should cover the attorneys' fees that FirstEnergy Family will likely incur during the pendency of FirstEnergy Federal's appeal. *See In re Cardizem,* 391 F.3d at 818 (affirming appeal bond that included "projected attorneys' fees" where operative statute included fee-shifting provision). Consistent with the Preliminary Estimate it submitted in advance of the Case Management Conference (Docket No. 14), FirstEnergy Family has incurred fees and expenses in excess of $100,000 to reach this stage of litigation, and it likely will incur a similar amount more to litigate FirstEnergy Federal's appeal to a conclusion. The Court therefore should order a bond of at least $350,000 to secure FirstEnergy Family's rights if the Court decides to stay the Preliminary Injunction.

## Conclusion

For the foregoing reasons, the Court should deny each of FirstEnergy Federal's two Motions to Stay. If, however, the Court determines that a stay is warranted, it should condition such stay on FirstEnergy Federal posting bond of at least $350,000 in advance of any stay becoming effective.

Respectfully submitted,

  /s/ David T. Movius
Dated:   November 13, 2012          David T. Movius (OH 0070132)
                                     *dmovius@mcdonaldhopkins.com*
                                    Matthew J. Cavanagh (OH 0079522)
                                     *mcavanagh@mcdonaldhopkins.com*
                                    MCDONALD HOPKINS LLC
                                    600 Superior Avenue, East, Ste. 2100
                                    Cleveland, Ohio 44114
                                    t 216.348.5400 │ f 216.348.5474

                                    *Counsel for FirstEnergy*
                                    *Family Credit Union*

{4048858:2}                    12

<u>**Certificate of Service**</u>

I hereby certify that a copy of the foregoing ***Brief in Opposition to FirstEnergy Federal Credit Union's Motions to Stay*** was electronically served using the Court's Electronic Case Filing (ECF) system and the parties have been served by electronic notice through the Court's ECF system.


   /s/ David T. Movius              
*One of the Attorneys for*
*FirstEnergy Family Credit Union*