IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FirstEnergy Family Credit Union, Inc., | Civil Action No. 5:12-cv-0864 |
| Plaintiff, | |
| v. | Judge Benita Y. Pearson |
| FirstEnergy Federal Credit Union, | ELECTRONICALLY FILED |
| Defendant. | |

**Opposition to FirstEnergy Family Credit Union, Inc.'s Motion
for Order to Show Cause and Request for Expedited Consideration**

The Court entered the Preliminary Injunction Order that is the subject of this Motion on November 7, 2012.  Over the past fourteen days, Defendant and Defendant's counsel have worked diligently to comply with the Court's Order on a number of fronts, as detailed below, amid a host of shifting circumstances over which Defendant had and has no control.  For the reasons set forth in this opposition and the attached Declaration, Defendant maintains that the relief requested by Plaintiff is not proper at this time.

I.      Defendant's Actions Since Entry of the Preliminary Injunction Order

Upon receipt of the Court's November 7, 2012 Order, Defendant took four immediate actions.  First, upon seeing the scope and terms of the Order, Defendant continued the process of selecting a name that will not violate the terms of the Court's Order and/or any other entity's intellectual property rights.  Second, Defendant's counsel notified the Court immediately, via motion filed the same day that the Order issued, of its practical inability due to reasons beyond its control to immediately comply with the Court's Order and sought a reasonable time-period of ninety days in which to bring itself into compliance with that Order.  Put simply, Defendant

1

could not break the law in order to comply with the Order's timing. Third, Defendant and Defendant's counsel conducted further settlement discussions with Plaintiff's counsel in the hopes that an amicable resolution might still be possible. Though no time period was specified, Plaintiff's counsel indicated he would work with Defendant's counsel to try to resolve the matter, and would not seek immediate enforcement of the Court's Order. Pritchard Decl. at ¶ 2. Finally, Defendant's counsel contacted in-house counsel for FirstEnergy Corp. to advise FirstEnergy Corp. of the Court's rulings on Plaintiff's Motion for Preliminary Injunction and Defendant's Motion to Dismiss for Failure to Join FirstEnergy Corp. *Id*. In-house counsel for FirstEnergy Corp. had conducted a private mediation in May 2012 to try to resolve the dispute. *Id*. at ¶ 3. At the time, Plaintiff was represented by different legal counsel. At the conclusion of that mediation session, in-house counsel for FirstEnergy Corp. requested that Defendant's counsel provide status reports to him as the litigation progressed. *Id*. at ¶ 4. Counsel for Defendant has done so, and occasionally has provided copies of filed pleadings or other public documents that Defendant's counsel found pertinent to the litigation. *Id*. at

### A. Actions By Defendant To Comply with the Court's Order Through November 14, 2012

In the days after the Court's Order issued, Defendant convened its Board of Directors, engaged in multiple discussions with the Board, set about identifying a list of potential new trade names, engaged in review of those trade names for any conflicts or other infringement concerns, obtained approval from both its Board of Directors and its insurer to authorize offering a financial settlement to Plaintiff, and outlined a planned course of action to Plaintiff's counsel to quickly move forward on phasing out its current name and adopting a new name. *Id*. at ¶ 5.

Defendant's Board of Directors approved a conceptual plan in the form of a proposed term sheet, and sought Plaintiff's approval as to the guidelines that would govern Defendant's

2

selection of a new trade name (*i.e*., the word after "FirstEnergy" could not start with an "f", Plaintiff does not object to use of the word "FirstEnergy" in Defendant's trade name, etc.). *Id*. at ¶ 6. Defendant attempted to seek agreement from Plaintiff as to the parameters identifying the bounds of what Plaintiff would consider to be a trade name that was "too close" to Plaintiff's name. *Id*. at ¶ 7. That process was designed to avoid selecting and approving a trade name that Plaintiff ultimately contended still caused it harm. This is an iterative process in that multiple names are being considered to avoid not only creating new legal issues, but also inadvertently creating any likelihood of confusion. That process could not effectively begin until Defendant knew the scope and terms of the November 7, 2012 Order. *Id*. at ¶ 8. By regulation, Defendant cannot change all instances of use of its name until the National Credit Union Administration ("NCUA") approves a new official charter name, and to introduce a new name as a "trade name" only and still use its official charter name on the enumerated items required by the governing regulations would not comply with the Court's Order and could actually increase confusion by introducing a third name. *See* 12 C.F.R. §740.2 (indicating a federally insured credit union may use a trade name other than its official charter name in advertising and signage, "*so long as it uses its official charter name in communications with the NCUA and for the share certificates or certificates of deposit, signature cards, loan agreements, account statements, checks, drafts and other legal documents*.") (emphasis added). Not wanting to make the situation worse, Defendant has attempted to identify and clear a new trade name, that, once approved by the NCUA, can be rolled out to all facets of Defendant's business.

Defendant's counsel indicated to Plaintiff's counsel that the proposed term sheet, if generally agreeable to Plaintiff, would be developed into a full agreement with more detailed timing provisions. Pritchard Decl. at ¶ 9. At no time did Defendant promise an executable,

proposed settlement agreement to Plaintiff as a "settlement proposal". *Id*. Further, in case no settlement would be reached, Defendant's counsel moved this Court for a ninety-day grace period to make the name change. (*See* Dkt. 40). Such modifications are routinely provided for where compliance with an injunction order would require breaking the law,[1] and are without question, within the inherent and discretionary powers of the Court to grant. *E.g.*, *Toledo Area AFL-CIO Council v. Pizza*, (N.D. Ohio 1995) ("The Court has inherent power to modify its own injunctions. In ruling on a motion to modify or dissolve a preliminary injunction, the Court exercises the same discretion it exercised in granting the injunction in the first place"). The power of a court of equity to modify a decree of injunctive relief is long-established, broad and flexible.

Defendant and Defendant's counsel have no interest in attempting to delay this process; rather, from a practical and legal perspective, Defendant required time to implement the Court's Order. Plaintiff's counsel appeared to understand the practical concerns of implementation.

Prior to receiving the Motion to Show Cause, Defendant had twice reached out to Plaintiff – first via a voicemail and secondly, via email – to discuss the proposed settlement after Plaintiff's counsel gave Defendant's counsel its "bottom line" settlement number of $150,000. *Id*. at ¶ 10. Instead, Plaintiff unilaterally cut off discussions and filed its Motion to Show Cause. Such action appears to be precipitated by Plaintiff's receipt of a copy of a subpoena to FirstEnergy Corp.

---

[1] Such instances include where a party is subject to foreign law and compliance with an injunction order would cause the party to violate foreign law. In those instances, principles of comity usually direct the injunction to be tailored to avoid placing the party in such a situation. *See generally, e.g.*, *U.S. v. First Nat'l City Bank*, 379 U.S. 378, 380 (1965) (agreeing with decision of District Court, who issued an injunction prohibiting property transfer, wherein order "indicat[ed] it would modify the order should compliance be shown to violate foreign law").

Defendant's counsel contacted in-house counsel at FirstEnergy Corp. late in the day on November 12, 2012 to inform counsel for FirstEnergy Corp. of the Court's November 7, 2012 Orders.  *Id*. at ¶ 11.  Defendant's counsel reiterated to FirstEnergy Corp. Defendant's understanding that FirstEnergy Corp. owns the FIRSTENERGY mark, and that Defendant is only able to use the "FirstEnergy" mark with the permission of FirstEnergy Corp.  *Id*. at ¶ 12. Defendant explained that fact discovery was set to close on November 16, 2012, and in light of the Court's Orders, including its ruling on the Motion to Dismiss for Failure to Join FirstEnergy Corp., Defendant's counsel believed that the testimony of FirstEnergy Corp. to support its position in the final hearing in this matter would be required.  *Id*. at ¶ 13.  Defendant's counsel inquired as to whether FirstEnergy Corp. would accept service of a subpoena.  In-house counsel agreed to do so.[2]  FirstEnergy's in-house counsel then informed Defendant that FirstEnergy Corp. inquired of Plaintiff upon what basis it believed it had a right to use the FirstEnergy mark via a letter or email sent to then-counsel for Plaintiff immediately after the May 2012 mediation session held in this case by FirstEnergy Corp.'s in-house counsel.  *Id*. at ¶¶ 14-15.  No response was received.  *Id*. at ¶ 15.   Finally, in-house counsel for FirstEnergy Corp. indicated that it had directed its own outside intellectual property counsel to prepare, and intended to require,  both parties to this litigation to execute mirror-image license agreements if either party desired to continue using the FIRSTENERGY mark.  *Id*.

Defendant's counsel prepared a subpoena to FirstEnergy Corp. that evening and provided that subpoena to FirstEnergy Corp. on the following morning, November 13, 2012.  *Id*. at ¶ 16.  Defendant's counsel immediately forwarded the subpoena to Plaintiff's counsel and

---

[2] Plaintiff and Defendant have subsequently addressed Plaintiff's argument in its Motion regarding the meet-and-confer.  Thus, by agreement, the arguments as to the timing of the subpoena, the timing of the deposition and meet-and-confer requirement are no longer being asserted by Plaintiff.

5

included a written request asking for Plaintiff's availability to discuss the proposed settlement terms.  *See* Ex. 2 to Movius Decl. attached to Plaintiff's Memorandum in Support of its Motion.  This email followed up a voicemail that was left for Plaintiff's counsel on the evening of November 12, 2012 after Defendant's counsel had talked to his client.  Pritchard Decl. at ¶ 17.  No response to either the voicemail from late in the day on November 12, 2012 or the email sent early in the morning on November 13, 2012 was received from Plaintiff.  *Id*. at ¶ 18.  At this time, Defendant's counsel believed that the Plaintiff and Defendant were conducting settlement negotiations, and Defendant's counsel intended on informing Plaintiff's counsel of its conversation with in-house counsel at FirstEnergy Corp upon their next communication.  *Id*. at ¶ 19.

Instead, Plaintiff elected to file the Motion to Show Cause at nearly 11 PM on the night of November 13, 2012.  That is how Defendant learned that settlement discussions were terminated and that Plaintiff intended to move forward with enforcement immediately.

On November 14, 2012, upon receipt of the Motion, Defendant, recognizing that settlement discussions had been terminated, was forced to file its Notice of Appeal and moved the Court for a stay on that basis.  *Id*. at ¶ 20.  Both of those filings occurred on November 14, 2012.  Further, Defendant's counsel and Plaintiff's counsel finally spoke.  During this conversation, Defendant's counsel informed Plaintiff's counsel of the substance of the conversation it had with FirstEnergy Corp.'s in-house counsel.  *Id*. at ¶ 21.

That evening Defendant's counsel received a call from in-house counsel for FirstEnergy Corp. and its outside intellectual property counsel, Heather M. Barnes.  *Id*. at ¶ 22.  This was the first time that Defendant's counsel had spoken to Ms. Barnes about this matter.  *Id*.  Defendant's counsel was informed that FirstEnergy Corp. intended to send mirror image licenses

6

to both Plaintiff and Defendant, and would be doing so shortly.  While Defendant's counsel was aware of the general terms of the license agreements, counsel did not review, see or receive any advance copy or draft of the license agreements.  *Id*. at ¶ 23.  Though Ms. Barnes indicated a course of action, Defendant had no reason to believe when, or if, that action would actually occur.

> **B.**  **Actions By Defendant To Comply with the Court's Order Since November 15, 2012**

On the morning of November 15, 2012, upon arriving to work, Defendant's counsel received a copy of the letter and mirror image license agreements issued by FirstEnergy Corp.'s intellectual property outside counsel, Ms. Barnes.  *Id*. at ¶ 24.  From the cover letter, it appeared that Mr. Movius also received a copy as counsel for Plaintiff.  Defendant's counsel promptly informed Defendant of the communication and Defendant determined it would sign the license agreement.  *Id*. at ¶ 25.  Recognizing that this factual circumstance has implications for this litigation regardless of what Plaintiff elects to do in response to this letter, Defendant attempted to reach Plaintiff's counsel to discuss the correspondence on November 15 and 16.  *Id*. at ¶ 26. Unable to reach Plaintiff's counsel, Defendant's counsel received an Order from this Court on November 16, 2012 in which the Court denied the Defendant's requests to stay the injunction. (Dkt. 47).  In footnote 2 of the Court's Order, it appeared that the Court was relying on the fact that FirstEnergy had not been involved in the litigation in reaching its decision.[3]  Moreover, it

---

[3] Footnote 2 of the Court's November 16, 2012 Order provides, "A mediation sponsored by First Energy Corp. occurred between the parties in May 2012. Until Defendant filed its motion to dismiss without prejudice for failure to join a necessary and indispensable party to the action, namely, FirstEnergy Corp. (ECF No. 25) on October 12, 2012, neither party wanted to involve FirstEnergy Corp. in this litigation. At the hearing on Plaintiff's Motion for Preliminary Injunction (ECF No. 27), David T. Movius (one of the attorneys for Plaintiff) stated that members of Plaintiff's board have had "high-level conversations" with FirstEnergy Corp. about the litigation.  FirstEnergy Corp., however, has not sought to intervene in the case at bar despite having full knowledge of the case and the facts and circumstances."

was evident from the letter received the day before by counsel for both parties that FirstEnergy was becoming involved through issuing the mirror image license agreements. Knowing that other motions were pending before the Court, Defendant's counsel determined that it would, via written communication copied to all counsel of record, alert the Court to the existence of the license agreements and the communication from FirstEnergy Corp. so as not to withhold information that may prove case-dispositive. *Id*. at ¶ 27. Defendant continued to try to reach Plaintiff's counsel through November 19, 2012 in order to discuss its position on the license agreements and hopefully avoid filing needless motions with the Court. Defendant then received the Court's Order on November 19, 2012 directing the filing of this written response.

Finally, Defendant's counsel states that it has since learned that members of the Board of Directors of Plaintiff previously met with David Winston and the General Counsel of FirstEnergy Corp. while this litigation was proceeding. Defendant's counsel understands from Mr. Winston that the Board of Directors members were informed at that time that FirstEnergy Corp.'s position is that Plaintiff does not have independent rights in and to the FIRSTENERGY mark. *Id*. at ¶ 27.

Defendant maintains that the execution of this license agreement by Defendant (regardless of what Plaintiff elects to do), materially changes the circumstances of this case. Defendant is now an official licensee with the express right to use the mark "FirstEnergy Federal Credit Union" granted from the trademark owner and sponsor, FirstEnergy Corp. At a minimum, this development gives rise to the defense of license and affects the analysis of FirstEnergy Corp.'s indispensability. Further, FirstEnergy Corp. has now evidenced its belief that both Plaintiff and Defendant are licensees. Should Plaintiff execute the license agreement, it is black letter law that Plaintiff cannot continue in this litigation without the participation of the

licensor, and the licensor has indicated its desire for the litigation to cease through (1) its explicit statements in the coverletter; and (2) the fact that it licensed Defendant to use its current name. *See Lisseveld v. Marcus*, 173 F.R.D. 689, 693 (M.D. Fla. 1997) ("Courts have held consistently that the owner of allegedly infringed intellectual property rights is a person needed for just adjudication under Rule 19. The typical situation arises when a licensee asserts its rights against an alleged infringer without joining the trademark owner licensor. In that scenario, the concern is that the interests of the unjoined party may not be vigorously asserted and it will suffer prejudice. The licensor of a trademark that is the subject of an infringement action by a licensee falls squarely within the language and policy of Rule 19. As the owner of the mark, the licensor has a legally protected interest in the subject matter of the action. A judgment for the alleged infringer, whether based on a finding that the licensed mark is not a valid trademark or that the defendant's mark does not infringe it, may prejudice the licensor's rights in his own mark. A judgment for the plaintiff-licensee could result in double obligations for the defendant, should the licensor subsequently sue on his own.") (citations omitted); *see also Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1997) (finding that nonexclusive trademark licensee did not have standing to assert an infringement claim, "since only the owner of the trademark may do so", and concluding that denial of the motion to dismiss for failure to join an indispensible party was improvidently denied by the district court).

## II.     Plaintiff Seeks To Treat The Preliminary Injunction Order as Final

Several other reasons counsel against granting Plaintiff's requested relief. Plaintiff has prevailed on a preliminary injunction motion; it has not been awarded final relief. Even though this Court has ordered preliminary injunctive relief, it does not mean that Defendant is somehow barred from continuing forward with discovery in order to present its case at the final hearing in

this matter or bringing changing factual information before the Court.  Thus, the repeated attempts to treat aspects of this case as finally determined (*i.e.*, the threat of a motion to quash legitimate discovery from FirstEnergy Corp. on information relating to the trade names and claims of ownership by asserting such issues have "already been litigated"; the premature request to deem this case exceptional and award fees pursuant to 15 U.S.C. § 1117(a) when no party has yet prevailed) is improper and should be rejected.  Defendant's continuing representation of its client in this litigation does not mean that it is flouting the Court's Order or otherwise not proceeding as swiftly as possible to comply with the Court's Order.

### III.     Plaintiff's Request for Relief Is Wholly Improper

Plaintiff seeks a variety of relief through its Motion, none of which can succeed in achieving its goal.  First, Plaintiff asks for a $1,000 per day fine to be assessed against Defendant for non-compliance with the Court's Order.  That number is an arbitrary number divorced from any real harm even arguably sustained by Plaintiff.  What's more, imposing that fine cannot force Defendant's compliance with the Court's Order.  It is not intransigence or reluctance that is guiding Defendant's actions; rather, it is governing law.  Defendant is working to comply with the Court's Order, but cannot do so immediately for the reasons already provided.  A fine does not serve the purpose served in the cases cited by Plaintiff.  Moreover, in none of the cases cited by Plaintiff involving trademark usage was the party who was subject to the injunction involved in a regulated industry that mandated continued use of its trade name.  Nor were any of the parties relying upon derivative rights from an employer-sponsor who was the actual trademark owner, and who ultimately confirmed that the licensee had permission to use the mark and issued a written license agreement.  Nor would shutting down a store front have the same impact that

10

shutting down access to financial accounts would have to all of the individual members of Defendant's credit union.

Secondly, it is frankly improper and premature to declare this case "exceptional" as no final hearing has been held in this matter.  Indeed, after asking for this relief in its Motion to Show Cause, even Plaintiff implicitly concedes, as it must, that such relief is not proper at this time.  *See* Memorandum in Support of Motion to Show Cause at 9 (asking to declare the case exceptional, "such that FirstEnergy Family will be entitled to recover its attorneys' fees ***in the event FirstEnergy Federal ultimately is found liable after a trial on the merits.***") (emphasis added).  The determination of exceptionality should occur only after a final determination on the merits.

## IV.     Conclusion

Defendant has provided this timeline to evidence its good faith efforts in attempting to comply with the Court's Order.   Defendant anticipates clarification at the hearing as to how the parties can resolve this matter in light of the factual developments.  Defendant does not believe that the relief requested by Plaintiff is proper or warranted, and requests denial of the requested relief.

Respectfully submitted,

Dated: November 21, 2012  By: /s/ Cecilia R. Dickson
J. Matthew Pritchard (*admitted pro hac vice*)
mpritchard@webblaw.com
Cecilia R. Dickson
cdickson@webblaw.com
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd, Suite 1200
Pittsburgh, PA 15222
(412) 471-8815 (telephone)

                    (412) 471-4094 (facsimile)

                    *Attorneys for FirstEnergy Federal Credit Union*

Case: 5:12-cv-00864-BYP  Doc #: 52  Filed:  11/21/12  12 of 13.  PageID #: 778

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of **Opposition to FirstEnergy Family Credit Union, Inc.'s Motion for Order to Show Cause and Request for Expedited Consideration** was served this 21st day of November, 2012, upon the following by way of the Court's ECF system:

>David T. Movius
>Matthew J. Cavanagh
>McDonald Hopkins LLC
>600 Superior Avenue, East
>Suite 2100
>Cleveland, OH 44114
>Email: dmovius@mcdonaldhopkins.com
>       mcavanagh@mcdonaldhopkins.com


>/s/ Cecilia R. Dickson
>Attorney for FirstEnergy Federal Credit Union